UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF ALABAMA
MOBILE DIVISION

In re:

BENDER SHIPBUILDING AND
REPAIR CO., INC.,

Case No. 09-12616-MAM

    Debtor.

BENDER SHIPBUILDING AND
REPAIR CO., INC.,

    Plaintiff,

v.

Adv. Proc. No.: 11-00115

MALONE CONSULTING
SERVICES et al.,

    Defendants.

**ORDER DENYING BENDER SHIPBUILDING'S MOTION FOR SUMMARY JUDGMENT AND DENYING MALONE CONSULTING SERVICES' MOTION FOR SUMMARY JUDGMENT**

Eric J. Breithaupt, Attorney for the Plan Administrator, Birmingham, Alabama
Michael B. Smith, Attorney for Malone Consulting Services, Mobile, Alabama

This case is before the court on Bender Shipbuilding and Repair Co., Inc.'s Motion for Summary Judgment and Malone Consulting Services' cross Motion for Summary Judgment. The court has jurisdiction to hear this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Order of Reference of the District Court. The court has the authority to enter a final order pursuant to 28 U.S.C. § 157(b)(2). For the reasons detailed below, Bender Shipbuilding's Motion for Summary Judgment is DENIED and Malone Consulting Services' Motion for Summary Judgment is DENIED.

1

## FACTS

Bender Shipbuilding and Repair Co., Inc. ("Bender") was the subject of an involuntary bankruptcy petition on June 9, 2009. At that time, Bender was insolvent and unable to pay its debts as they came due. Bender consented to the filing on July 1, 2009 and the case was converted to one under Chapter 11 of the Bankruptcy Code. A joint plan of liquidation under Chapter 11 was confirmed on December 9, 2010 and Scouler & Company was appointed as Plan Administrator. Pursuant to that appointment, Scouler was given authority to pursue certain avoidance actions on behalf of Bender's estate.

Bender's books and records indicate that Malone Consulting Services ("Malone") received a payment from Bender within the 90 days leading up to the filing of the involuntary petition. The payment arose out of an agreement between Bender and Malone executed in May of 2008 (the "Malone agreement"). In the Malone agreement, Malone agreed to provide Bender engineering consulting services for the NSRP Project "Shipbuilding Opportunities in Short Sea Shipping" (the "project") as a subcontractor under Bender's prime contract with Advanced Technologies Inc. ("ATI"). According to Bender, the project was a government funded project where the United States would pay ATI and ATI would then pay Bender. Thereafter, Bender would pay the subcontractors to the project from funds secured from ATI within 30 days. The payments from ATI to Bender would occur pursuant to the completion of certain project milestones.

The Malone agreement explains that Malone, as a subcontractor, was to be paid $21,250 for its work performed between January 8, 2008 and October 20, 2008 and that "Payments [were] payable net 30 days after receipt of funding from ATI and approval by Buyer's representative." John Malone, Principal Consultant for Malone, echoed that Bender "was not required to make payment on the invoice submitted by [Malone] until such time as [Bender]

2

received its payment with ATI." Bender submitted an email from ATI representative Jim House which indicated that Bender would routinely pay the subcontractors well after 30 days from receipt of subcontractor invoices and receipt of funds from ATI. The email stated the following:

> Our latest spreadsheet reflecting NSRP project milestone payments is attached, indicating Bender invoices ATI is holding…as well as the subcontractor invoices for which we are awaiting checks for transmittal….As you can see from the updated sheet, all of the subcontractor invoices currently up for payment are 60 or more days old from the invoice date, and several are approaching 90 days past the date of ATI's payment to Bender for the corresponding milestones—well past the 30-day span called for in our current agreement.

The spreadsheet referred to in Mr. House's email does not include any specific reference to Malone, its contract, or any outstanding payment owed to Malone.

The agreement between Bender and Malone also charged Malone with the responsibility of submitting an invoice to Bender after its work was completed. The invoice that Malone submitted to Bender was dated January 30, 2009 and stated that payment was due upon receipt. According to John Malone's affidavit, Bender submitted a report to ATI on or around March 4, 2009 and Bender received funding from ATI on or around March 13, 2009. A letter from Rick Self, President of ATI, to a Bender representative on March 4, 2009 indicates that ATI agreed to release payment to Bender on March 5, 2009 for the completion of certain milestones. In line with that testimony, an email from Mr. Self on March 5, 2009 states that $653,563 in funds were released to Bender from ATI pursuant to "the agreement in place prior to Bender's action with Marquette." Another email from Jim House of ATI on March 18, 2009 indicates that Bender received the $650,000 payment from ATI. It states that ATI expected that "those funds would immediately be applied to outstanding subcontractor invoices, most of which are more than 60 days old," but that ATI had not received any "indication that any of those invoices [had] been

3

paid…." Malone was paid $21,250 pursuant to a check dated April 9, 2009. The payment was made out of Bender's general operating account at Regions Bank.

Despite its agreement to use the funds received from ATI to satisfy subcontractor claims, in the spring of 2009, Bender entered into a factoring agreement with one of its creditors, Marquette Business Credit, Inc. ("Marquette"). According to the factoring agreement, Marquette would advance funds to Bender in exchange for access to Bender's outstanding accounts receivables, including those receivables due from ATI to Bender. Moreover, on March 13, 2009, Marquette and Bender entered into a forebearance agreement where any funds paid on any receivable would be paid directly to Marquette. The funds received from ATI were never segregated specifically for payment to subcontractors until on or around the petition date of June 9, 2009.

Bender filed an adversary proceeding pursuant to 11 U.S.C. § 547 seeking to recover the payment to Malone as an avoidable preference and thereafter filed this Motion for Summary Judgment. In support, Bender filed the affidavits of Dan Scouler of Scouler & Company; Joseph Mangin, Chief Financial Officer for Bender; and Michael Johnson of Scouler & Company. Malone filed a response to Bender's motion on August 2, 2012 and asserted a cross Motion for Summary Judgment. Malone did not dispute that the transfer in question was preferential, but, in response, cited the judicially created earmarking defense and the ordinary course of business defense.

LAW

A motion for summary judgment is controlled by Rule 56 of the Federal Rules of Civil Procedure, which is applicable to bankruptcy proceedings pursuant to Rule 7056 of the Federal Rules of Bankruptcy Procedure. A court shall grant summary judgment to a moving party when the movant shows that "there is no genuine issue as to any material facts and . . . the moving

party is entitled to judgment as a matter of law." Fed. R. Bankr. P. 7056(c). In *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986), the Supreme Court found that a judge's function is not to determine the truth of the matter asserted or weight of the evidence presented, but to determine whether or not the factual disputes raise genuine issues for trial. *Anderson*, 477 U.S. at 249-50. In making this determination, the facts are to be looked upon in the light most favorable to the nonmoving party. *Id*.; *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Allen v. Bd. of Public Educ. for Bibb County*, 495 F.3d 1306 (11th Cir. 2007). The moving party bears the burden of proving there is no issue as to any material fact and that judgment should be entered as a matter of law. Fed. R. Bankr. P. 7056.

Bender's Motion for Summary Judgment asserts that the $21,250 payment made to Malone is an avoidable preference. "A preference is 'a transfer that enables a creditor to receive payment of a greater percentage of his claim against the debtor than he would have received if the transfer had not been made and he had participated in the distribution of the assets of the bankrupt estate.'" *In re Issac Leaseco, Inc.*, 389 F.3d 1205, 1209 (11th Cir. 2004). The undisputed facts show that the elements of 11 U.S.C. § 547(b) are met in this case. The payment (1) was a transfer of Bender's property; (2) was to a creditor, Malone; (3) was on account of an antecedent debt owed to Malone by Bender for work Malone completed; (4) was made while Bender was insolvent; (5) was made within 90 days of Bender's petition date; and (6) enabled Malone to receive more money than it would have received in a Chapter 7 case and if the transfer had not been made. Thus, Bender's motion for summary judgment is due to be granted unless Malone can demonstrate the applicability of a defense or, at a minimum, a genuine issue of material fact regarding the applicability of a defense.

Malone raises two defenses to Bender's preference action: (1) the judicially created earmarking defense and (2) the ordinary course of business defense codified at 11 U.S.C. §

5

547(c)(2). Parties asserting defenses to preferential transfers, like Malone, shoulder the burden of proving their defenses. 11 U.S.C. § 547(g); *In re Moltech Power Systems, Inc.*, 327 B.R. 675, 679 (Bankr. N.D. Fla. 2005). Moreover, in order to prevail on summary judgment, Malone has the burden to prove that no genuine issue of material fact exists as to at least one of its defenses and that it is entitled to judgment as a matter of law. Each defense will be discussed separately.

1.

The first defense relied upon by Malone is the ordinary course of business defense codified at 11 U.S.C. § 547(c)(2). The ordinary course of business defense prevents a trustee or debtor-in-possession from avoiding a transfer that is otherwise avoidable under § 547(b) to the extent that the transfer was (1) in payment of a debt incurred by the debtor in the ordinary course of business of the debtor and the transferee and *either* (2) made in the ordinary course of business of the debtor and the transferee or (3) made according to ordinary business terms. It is significant that the last two requirements are stated in the disjunctive.

The undisputed facts show that Bender incurred the debt from Malone in its ordinary course of business. Therefore, the first element of the ordinary course defense is satisfied. Taking the third element first, Malone has not submitted any evidence tending to indicate that the payment it received was according to ordinary business terms. As such, that element is not satisfied.

The parties' dispute involves the second element, the so-called subjective prong of § 547(c)(2) which focuses on whether the particular transaction at issue was ordinary as between the parties, a fact-intensive inquiry. *Moltech Power Systems*, 327 B.R. at 680 (Bankr. N.D. Fla. 2005). Malone argues that the payment occurred according to contract terms then-existing between the parties, and thus, that the transaction was presumptively according to the parties' ordinary course of business. Bender disagrees. Bender insists that the payment was not according

6

to contract terms because it was not paid in the time frame provided by the contract. Moreover, Bender argues that the invoice submitted by Malone required payment upon receipt, and the invoice was not paid for more than 60 days after its receipt by Bender.

In many "ordinary course of business" cases, the parties at issue have had significant business dealings with one another prior to the transaction or transactions in question. In those cases, courts review the prior dealings and compare them to the allegedly preferential dealings to determine whether the latter dealings comport to the ordinary course of business between the parties. Here, Malone received one payment from Bender pursuant to a contract that called for only one payment. No other business dealings between the parties were presented to the court as a basis for comparison. However, that fact is not necessarily fatal to Malone's ordinary course defense. Some courts have held that where parties to a first time transaction do not vary from the terms of their written agreement, the agreement will define the ordinary course of business for the transaction. *In re US Office Products Co.*, 315 B.R. 37, 39 (Bankr. D. Del. 2004); 5 *Collier on Bankruptcy* ¶ 547.04[2][a] (16th Ed. 2011) (citing cases). This court agrees with those courts. The *US Office Products* court stated the following:

> [a]lthough a history of dealing between parties is certainly the strongest factor supporting a determination that the business between a debtor and an alleged preference creditor is ordinary, we do not believe it is absolutely necessary in every case. In some instances, ..., the ordinary course of business may be established by the terms of the parties' Agreement, until that Agreement is somehow or other modified by actual performance.

*Id*. (quoting *Kleven v. Household Bank F.S.B.*, 334 F.3d 638 (7th Cir. 2003)); *see also In re Ahaza Systems, Inc.*, 482 F.3d 1118, 1125 (9th Cir. 2007).

Therefore, if the evidence submitted by Malone establishes that it received the payment according to the terms of the Malone agreement, then the court is satisfied that Malone has met its burden to prove that the payment was received in the ordinary course of business. This is so

because the Malone agreement represents the ordinary course of business between the parties in this case. As evidence, Malone presented the affidavit of its Principal Consultant, John Malone. Mr. Malone stated that the agreement between it and Bender required Malone to submit an invoice for its work and required payment to Malone on the invoice within 30 days after receipt of funding by Bender from ATI. Mr. Malone further explained that Malone submitted its invoice in January of 2009 and that the ATI funding did not come in until March 13, 2009. The emails submitted by Bender support that ATI released funding to Bender at least as early as March 5, 2009. A check proves that Malone was paid $21,250 on April 9, 2009.

When considering all of the evidence, a genuine issue of material fact exists regarding whether Malone was paid pursuant to the contract terms, and consequently, whether the ordinary course of business defense applies in this case. It is unclear whether Bender received the funds from ATI on March 5, 2009, when they were released, or on March 13, 2009, as stated in Mr. Malone's affidavit. It is undisputed that the payment was made to Malone on April 9, 2009. Thirty days prior to April 9, 2009 is March 10, 2009. If the funds were received by Bender on March 5, or any day prior to March 10, then the payment was made outside of 30 days. In contrast, if the funds were received by Bender from ATI on March 13, or sometime after March 10, then the payment was according to the contract. Unfortunately, the evidence presented to the court does not make sufficiently clear that the payment was received according to the parties' agreement.

Bender argues that the evidence shows that Bender routinely failed to comply with the ATI agreement, including its attendant responsibility to pay subcontractors. The court is not persuaded by Bender's argument. Bender did not present any specific evidence showing that the agreement at issue, the Malone agreement, was not complied with. Instead, Bender presented evidence showing that in general subcontractors were not paid according to the agreement.

8

Bender also argues that the invoice submitted by Malone to Bender stated that payment was "due upon receipt" and that the invoice was not paid for more than 60 days after its receipt. The "due upon receipt" language does not speak to whether the Malone agreement's terms were complied with. It is a red herring. Malone submitted the invoice after the parties entered into the May 7, 2008 agreement with knowledge that it did not expect payment until Bender received funding from ATI. John Malone's affidavit reflects that understanding.

Nonetheless, Malone's motion for summary judgment is denied because Malone failed to prove the absence of any genuine issue of material fact as to whether the terms of the Malone agreement were satisfied. However, the evidence presented by Malone is sufficient to create an issue of material fact with regard to whether the ordinary course of business defense will preclude Bender's preference claim. Thus, Bender's motion for summary judgment is denied as well.

2.

Malone also asserts the judicially-created earmarking doctrine in response to Bender's preference allegation. The 11th Circuit recently described the earmarking doctrine as follows in *In re Egidi*, 571 F.3d 1156, 1162 (11th Cir. 2009):

> Under the earmarking doctrine, which is a court fashioned doctrine, a third party makes a loan to a debtor so that the debtor is able to satisfy the claim of a designated creditor. *Coral Petroleum, Inc. v. Banque Paribas-London*, 797 F.2d 1351, 1356 (5th Cir.1986). In that case, the proceeds do not become part of the debtor's assets, and no preference is created. *Id*. This exception exists "primarily because the assets from the third party were never in the control of the debtor and therefore payment of these assets to a creditor in no way diminishes the debtor's estate." *Id*.

Malone argues that the earmarking doctrine applies to the funds it received from Bender. Malone states that because those funds were paid from ATI, a third party, to Bender and then paid directly to it, they never became property of the estate. The court disagrees. The applicability of

9

the earmarking doctrine rises and falls with the level of control that the debtor exercised over the disposition of the funds. *Egidi*, 571 F.3d at 1160-61. In this case, the evidence shows that Bender received the funds from ATI at various milestones. Upon receipt, Bender did not automatically transfer the funds to subcontractors or place them into a segregated account to be exclusively used to pay subcontractors. Instead, Bender placed the funds in its general operating account and they were used for various purposes. In fact, the evidence shows that Bender factored many of its accounts receivable, including those from ATI, to Marquette. Bender took clear control over the disposition of the funds it received from ATI. Such control defeats Malone's assertion of the earmarking doctrine.

THEREFORE IT IS ORDERED

1. Bender's Motion for Summary Judgment is DENIED because a genuine issue of material fact exists as to whether the ordinary course of business defense applies in this case;

2. Malone's Motion for Summary Judgment is DENIED because a genuine issue of material fact exists as to whether Malone received the payment according to the terms of the Malone agreement;

3. Malone's Motion for Summary Judgment is DENIED because, as a matter of law, the earmarking doctrine does not apply in this case where Bender had control over the disposition of the funds it received from ATI.

Dated: October 15, 2012

*[signature]*
MARGARET A. MAHONEY
CHIEF U.S. BANKRUPTCY JUDGE